**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**TOPEKA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CR. NO. 12-40119-01-JAR |
| | ) |
| ROBERT H. HARSHBARGER, JR., | ) |
| | ) |
| Defendant. | ) |

## PETITION TO ENTER PLEA PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The defendant represents to the Court:

(1)    My full true name is:  Robert Harshbarger, Jr.

(2)    I am represented by legal counsel.  Their names are:  Douglas B. Farquhar and Jeffrey D. Morris

(3)    I received a copy of the Indictment before being called upon to plead.  I read all counts in the Indictment and have discussed the counts and the allegations with my lawyers.  I fully understand the charges made against me.

(4)    I told my lawyers all the facts and circumstances known to me about the charges made against me in the Indictment.  I believe that my lawyers are fully informed on all such matters.

(5)    I know that the Court must be satisfied that there is a factual basis for a plea of "GUILTY" before my plea can be accepted.  I represent to the Court that I did the following acts in connection with Count 1 charging a violation of Title 21, United States Code Section 331(a)(misbranding) and Count 3 of the indictment charging a violation of Title 18, United States Code, § 1347(health care fraud):

*See* **Section 2 of the Plea Agreement, pages 2-7, reciting the facts of the case.**

(6)    My lawyers have counseled and advised me on the nature of each charge, on all lesser included charges, and on all possible defenses that I might have in this case.

(7)     I know that I have the right to plead "NOT GUILTY" to any offense charged against me. If I plead "NOT GUILTY" I know the Constitution guarantees me (a) the right to a speedy and public trial by a jury; (b) at that trial, and at all stages of the proceedings, the right to the assistance of a lawyer; (c) the right to see and hear all witnesses called to testify against me, and the right to cross-examine those witnesses; (d) the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in my favor; and (e) the right not to be compelled to incriminate myself by taking the witness stand; and if I do not take the witness stand, no inference of guilt may be drawn from such failure.

(8)     I know that if I plead "GUILTY," I am thereby waiving my right to a trial, and that there will be no further trial of any kind, either before a Court or jury; and further, I realize the Court may impose the same punishment as if I had pleaded "NOT GUILTY, " stood trial, and been convicted by a jury.

(9)     I know that if I plead "GUILTY," the Court will ask me questions about the offense(s) to which I have pleaded, and since I will be answering these questions under oath, on the record, and in the presence of my lawyers, that my answers may later be used against me in a prosecution for perjury or false statement.

(10)     My lawyers informed me that the plea of "GUILTY" could subject me to a sentence as to Count 1 of the indictment of not more than 3 years of imprisonment, a fine not to exceed $250,000, and 1 year of supervised release, and a $100 mandatory special assessment. My lawyers informed me that the plea of "GUILTY" could subject me to a sentence as to Count 3 of the indictment of not more than 10 years of imprisonment, a fine not to exceed $250,000, and 1 year of supervised release, and a $100 mandatory special assessment.   My lawyers have advised that I am pleading guilty under Rule 11(c)(1)(C) with a binding sentence recommendation of 48 months, restitution of $845,504.34, a fine of $25,000 and forfeiture in the amount of $425,000.

I also have been informed that should the Court find me in violation of the supervised release term, the term could be revoked and an additional term of imprisonment not to exceed the maximum term of imprisonment may be imposed. I have also been informed that the Court may order me to make restitution in compliance with 18 U.S.C. § 3663 and § 3664 or as a condition of supervision, if such is ordered under 18 U.S.C. § 3563, in addition to any other penalty provided by law. I further understand that if I am pleading "GUILTY" to an offense which is subject to the Sentencing Reform Act, I cannot be released on parole and, if imprisonment is ordered in my case, the sentence imposed by the Court will be the sentence I serve less any good time credit if I earn it.

(11)     I know that in addition to any other penalty imposed, including any fine or restitution order, the Court is required to impose a special monetary assessment in the amount of $100.00 per count. I understand this penalty is to be paid at the time of sentencing.

(12)     I understand that if my case involves drug trafficking or drug possession, the Court may deny or suspend my eligibility to receive federal benefits pursuant to 21 U.S.C. § 862, except for those specifically exempted.  I understand that if this is my second or subsequent conviction for possession of a controlled substance, the Court may order me to complete drug

treatment or community service as specified in the sentence as a condition for reinstatement of benefits.

(13)    I know that the Court may also order, in addition to the penalty imposed, that I give reasonable notice and explanation of the conviction, in such form as the Court may approve, to the victims of the offense.

(14)    I have been advised and understand that if I am not a U.S. citizen, a conviction of a criminal offense may result in deportation from the United States, exclusion from admission to the United States, and/or denial of naturalization.  I have been advised to consult an attorney concerning this circumstance.

(15)    If I am on probation or parole in this or any other Court, I know that by pleading guilty here, my probation or parole may be revoked and I may be required to serve time in that case, which will be consecutive, that is, in addition to any sentence imposed upon me in this case.

(16)    I declare that no officer or agent of any branch of government (federal, state, or local) has promised, suggested, or predicted that I will receive a lighter sentence, or probation, or any other form of leniency if I plead "GUILTY," except as follows:

**Refer to the Rule 11(c)(1)(C) Plea Agreement attached hereto.**

If anyone else, including my attorneys, made such a promise, suggestion, or prediction, except as noted in the previous sentence, I know that he had no authority to do so.

I know that the sentence I will receive is typically a matter within the control of the Judge but my Plea Agreement sets forth a binding sentence recommendation of 48 months, restitution of $845,504.34, a fine of $25,000 and forfeiture in the amount of $425,000.

(17)    I understand that a U.S. Probation Officer will be assigned to conduct a thorough presentence investigation to develop all relevant facts concerning my case unless the Court finds that there is in the record sufficient information to enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553.  The report of the presentence investigation shall contain the factors set forth in Rule 32.  These include the classification of the offense and of the defendant under the categories established by the Sentencing Commission, the kinds of sentence available to the Court, and the sentencing range the officer believes applicable.  The report shall include the history and characteristics of the defendant and such other information required by the Court recognizing the factors set forth in paragraph (16) above.

(18)    My plea of guilty is the result of my plea agreement entered into between the Government attorney, my attorney, and me, a copy of which is attached hereto.

Since my plea of guilty is the result of a plea agreement, I hereby state that the terms of said agreement are incorporated within the Plea Agreement attached to this Petition. The outline of the plea agreement is as follows:

I will plead guilty to Count One and Count Three.  My Plea Agreement is governed by Rule 11(c)(1)(C) and sets forth a binding recommendation on the sentence to be

imposed. As to sentencing, the parties agree to a custodial sentence of 48 months, restitution of $845,504.34, a fine of $25,000 and forfeiture in the amount of $425,000.

I fully understand that the Court is bound by the terms of the plea agreement, but may decline the agreement outright. If the Court rejects the agreement, I understand the plea of guilty, and the plea agreement, are withdrawn.

(19)    I believe that my lawyers have done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he has given me.

(20)    I know that the Court will not permit anyone to plead "GUILTY" who maintains he/she is innocent and, with that in mind, and because I am "GUILTY" and do not believe I am innocent, I wish to plead "GUILTY" and respectfully request the Court to accept my plea of "GUILTY" and to have the Clerk enter my plea of "GUILTY" to the Count One and Count Three.

(21)    My mind is clear, I am not under the influence of alcohol or drugs, and I am not under a doctor's care. The only drugs, medicines or pills that I took within the past seven (7) days are the following: N/A

(22)    I have not regularly received treatment for mental illness. I have never been adjudicated mentally incompetent. No psychiatrist, physician, or psychologist has ever found me to be mentally incompetent. I do not claim incompetence.

(23)    I offer my plea of "GUILTY" freely and voluntarily, and further state that my plea of guilty is not the result of any force or threats against me, or of any promises made to me other than those noted in this petition. I further offer my plea of "GUILTY" with full understanding of all the matters set forth in the Indictment and in this petition, and in the certificate of my attorney which is attached to this petition.

(24)    I waive the reading of the Indictment in open court, and I request the Court to enter my plea of "GUILTY" to Count One and Count Three of the Indictment as set forth in paragraph (20) of this petition.

(25)    I swear that I have read, understood, and discussed with my attorney, each and every part of this Petition to Plead Guilty, and that the answers which appear in every part of this petition are true and correct.

Signed and Sworn to by me in open court, in the presence of my attorney, this 21st day of May, 2013.

_____
(Defendant)

Subscribed and Sworn to before me this 21st day of May, 2013.

_____

(Deputy Clerk)

_____

US District Judge

## CERTIFICATE OF COUNSEL

The undersigned, lawyer and counselor for the defendant <u>Robert Harshbarger, Jr.</u> hereby certifies:

(1)    I have read and fully explained to the defendant the allegations contained in the Indictment in this case.

(2)    To the best of my knowledge and belief the statements, representations and declarations made by the defendant in the foregoing petition are in all respects accurate and true.

(3)    I explained the maximum penalty for each count to the defendant.

(4)    The pleas of "GUILTY" offered by the defendant in paragraph (20) accords with my understanding of the facts he/she related to me and is consistent with my advice to the defendant.

(5)    In my opinion, the defendant's waiver of reading of the Indictment in open court as provided by Rule 10 is voluntarily and understandingly made, and I recommend to the Court that the waiver be accepted.

(6)    In my opinion, the plea of "GUILTY" offered by the defendant in paragraph (20) of the petition is voluntarily and understandingly made.  I recommend that the Court accept the plea of "GUILTY."

(7)    I have made predictions to the defendant concerning the sentence the Court may award because the Plea Agreement is executed pursuant to Rule 11(c)(1)(C) and incorporates a binding sentencing recommendation that binds the Court upon acceptance of the plea.

(8)    I further represent to the Court that the defendant's plea of "GUILTY" is the result of a plea agreement, a copy of which is appended to the Petition to Plead Guilty.

Signed by me in open court in the presence of the defendant above named and after full discussion of the contents of this certificate with the defendant, this 21st day of May, 2013.

(Attorney for the Defendant)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-40119-01-JAR |
| | ) | |
| ROBERT HARSHBARGER, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The United States of America, by and through Tanya J. Treadway, Assistant

United States Attorney, and Robert Harshbarger, Jr., the defendant, personally and by

and through his attorneys, Douglas B. Farquhar, Jeffrey D. Morris, and Christina M.

DiGirolamo, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure:

1.    **Defendant's Guilty Plea.**  If the Court permits, the defendant agrees to

plead guilty to Counts 1 and 3 of the Indictment.  Count 1 of the Indictment charges a

violation of 21 U.S.C. § 331(a), misbranding.  Count 3 of the Indictment charges a

violation of 18 U.S.C. § 1347, health care fraud.  By entering into this plea agreement,

the defendant admits to knowingly committing these offenses, and to being guilty of

these offenses.  The defendant understands that the maximum sentence which may be

imposed as to Count 1 of the Indictment to which the defendant has agreed to plead

guilty is not more than 3 years' imprisonment; a fine of $250,000; and 1 year of

supervised release.  The defendant understands that the maximum sentence which

may be imposed as to Count 3 of the Indictment to which the defendant has agreed to

1

plead guilty is not more than 10 years' imprisonment; a fine of $250,000, or not more

than the greater of twice the gross gain or twice the gross loss; and not more than 3

years of supervised release.  The defendant understands that there will be a $200

mandatory special assessment.

      2.   **Factual Basis for the Guilty Plea.**  The parties agree the facts

constituting the offense to which the defendant is pleading guilty are as follows:

The defendant was a registered pharmacist in the state of Tennessee who owned and
operated American Inhalation Medication Specialists, Inc., ("AIMS"), a pharmacy
located in Kingsport, Tennessee.

From in or about January 2004, through in or about August 2009, the defendant, doing
business as AIMS, engaged in a scheme to defraud Kansas Dialysis Services, L.C.
("Kansas Dialysis"), Kansas Dialysis patients, and various health care benefit programs,
including Medicare and Medicaid, by selling Kansas Dialysis a misbranded drug, by
causing Kansas Dialysis to administer unwittingly a misbranded drug to its patients, and
by causing false claims to be submitted to the various health care benefit programs for a
misbranded drug.  The misbranded  drug was a non-FDA-approved iron sucrose
product, which was administered to kidney dialysis patients in Kansas.

As a result of the scheme to defraud, Kansas Dialysis paid over $875,000 to the
defendant and his business, AIMS.  Additionally, health care benefit programs paid over
$848,000 for the misbranded  drug, and patients paid for the misbranded drug.  Had
Kansas Dialysis, the patients, and the health care benefit programs known they were
paying for a misbranded drug, they would not have done so.

THE FOOD, DRUG, AND COSMETIC ACT

The Food and Drug Administration ("FDA") is the federal agency responsible for
protecting the health and safety of the American public by ensuring, among other things,
that drugs are safe and effective for their intended uses.  FDA's responsibilities include
regulating the manufacture and distribution of drugs, including prescription drugs,
shipped or received in interstate commerce, as well as the labeling of such drugs.  FDA
carries out its responsibilities by enforcing the Food Drug and Cosmetic Act ("FDCA"),
21 U.S.C. § 301, *et seq.* and other pertinent laws and regulations.

In enacting the FDCA, Congress sought to prevent America's drug supply from being
compromised, and determined that the public interest in the purity of prescription drugs
and pharmaceutical products distributed to American consumers warrants the
imposition of high standards of care on those who distribute those products to the

public.  Under the FDCA, the responsibility for maintaining the quality and safety of drugs is not placed on the innocent public that purchases drugs, but is instead placed on those who sell and distribute drugs.

Under the FDCA, consumers have a right to expect that drug distributors will be vigilant and responsible in matters that affect the public health.  Furthermore, consumers receiving pharmaceutical products from distributors in the United States have an expectation that the pharmaceuticals they are receiving are safe and have been approved by the FDA.

The FDCA defines a "drug" as –

   a.   articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

   b.   articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals;

   c.   articles (other than food) intended to affect the structure or any function of the body of man or other animals; and

   d.   articles intended for use as a component of any articles specified in clause (a), (b), or (c).  *See* 21 U.S.C. § 321(g)(1).

According to 21 U.S.C. § 353(b)(1), some drugs intended for human use can be dispensed only upon the valid prescription of a practitioner licensed by law to administer such drugs.  These drugs are known as "prescription drugs."  A drug is a prescription drug if, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, [it] is not safe for use except under the supervision of a practitioner licensed by law to administer such drug."  21 U.S.C. § 353(b)(1)(A).

Iron sucrose is a "prescription drug" under the foregoing definitions.

The term "labeling" is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  *See* 21  U.S.C. § 321(m).  Labeling includes "brochures, booklets, mailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound prints, and similar pieces of printed, audio, or visual matter descriptive of a drug and references published . . . for use by medical practitioners, pharmacists, or nurses, containing drug  information supplied by the manufacturer, packer or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor."  *See* 21 C.F.R. § 202.1(i)(2).

The term "label" is defined as a display of written, printed, or graphic matter upon the immediate container of any article. *See* 21 U.S.C. § 321(k).

The FDCA, in relevant part, states that a drug is deemed to be misbranded if, among other things:

a.  its labeling is false or misleading in any particular, including material omissions. *See* 21 U.S.C. §§ 352(a), 321(n).

b.  unless, in package form, it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor, and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count. *See* 21 U.S.C. § 352(b).

c.  the drug is offered for sale under the name of another drug. 21 U.S.C. § 352(i)(3).

THE SCHEME TO DEFRAUD

The defendant, through AIMS, supplied Kansas Dialysis with what Kansas Dialysis believed to be Venofer©, an FDA-approved iron sucrose drug manufactured by American Regent. Venofer© is a prescription drug used to replenish the body's iron stores in adult patients with iron deficiency anemia associated with chronic kidney disease. The active ingredient in Venofer© is iron sucrose.

Chronic kidney disease is caused by damage to the kidneys which often results from high blood pressure and diabetes. Chronic kidney disease means that, over time, the kidneys do not function properly and cannot filter waste from the blood. Dialysis is a process that filters the blood when the kidneys no longer can.

American Regent is the sole approved manufacturer of Venofer©. American Regent and its authorized wholesalers/distributors are the only source for FDA-approved Venofer©. Venofer© is the leading iron sucrose drug sold for iron deficiency associated with kidney disease, and it is the only iron sucrose drug that is FDA-approved for both pre-dialysis and post-dialysis treatment. There are no approved generic iron sucrose drugs.

Venofer© is administered either through a dialysis line or intravenously for non-dialysis patients.

AIMS invoiced Kansas Dialysis for Venofer©. But, in truth and in fact, as the defendant well knew, he was supplying Kansas Dialysis with misbranded iron sucrose products obtained from other than American Regent and its authorized wholesalers/distributors, including from sources in China.

4

Specifically, in or about September 2004, AIMS received a shipment of eight (8) kilograms of iron sucrose (also known as iron saccharate) from Qingdao Shengbang Chemical Company in Qingdao, China. The defendant continued to receive iron sucrose from China through at least June 2009, including shipments of iron sucrose from Shanghai Rory Fine Chemicals Co., Ltd., in Shanghai, China.

On or about August 4, 2009, a Kansas Dialysis employee made a recorded telephone call to the defendant, under the guise that Kansas Dialysis was being questioned by an American Regent sales representative about Kansas Dialysis's source for their Venofer©. The Kansas Dialysis employee asked the defendant about the source for the drug being provided in the pre-filled syringes. The defendant informed that he was supplying Kansas Dialysis with Venofer© that he was purchasing from a Florida pharmacy. The defendant expressed concern about American Regent stirring up trouble and stated: "They are going to try to get the FDA after us for repackaging, and I would rather not deal with the FDA."

On or about August 25, 2009, in response to a letter from Kansas Dialysis, the defendant left a voice mail message at Kansas Dialysis, informing that his source for the Venofer© was Cardinal Health, an authorized wholesaler of pharmaceuticals. But, in truth and in fact, the first purchase of Venofer© AIMS made from Cardinal Health occurred on July 24, 2009.

On or about September 16, 2009, **ROBERT HARSHBARGER, JR.,** confirmed that he received iron sucrose from China for approximately four (4) years, and that it was cheaper than purchasing Venofer©.

Venofer© was not provided in pre-filled syringes from the approved manufacturer, American Regent, or from any of its authorized wholesalers/ distributors. American Regent and its authorized wholesalers/distributors packaged and sold Venofer© in single-use, colorless, 5 milliliter glass vials (ampules).

The American Regent 5 milliliter ampules are labeled as Venofer©, with the National Drug Code 0517-2340-10, a unique universal product identifier for human drugs that registered drug manufacturers use. The American Regent label also contains the name and address of the manufacturer (American Regent, Inc., Shirley, NY 11967), a lot number, and an expiration date. Additionally, the Venofer© ampules contain the following label information:

> Each 5 mL contains: 100 mg elemental iron (as iron sucrose) in water for injection. The drug product contains approximately 30% sucrose w/v (300 mg/mL) and has a pH of 10.5-11.1. The osmolarity of the injection is 1250 mOsmol/L. Product contains no preservatives. Store at 25°C (77° F) [See USP]. Do not freeze. Sterile. Usual dosage: see package insert.

The labels on the syringes **ROBERT HARSHBARGER, JR.**, provided had lot numbers, code numbers, and a "use by" date, and contained the following information:

### IRON SUCROSE INJECTION, USP

Each ml contains 20 mg elemental iron Sterile Nonpyrogenic Rx only For Intravenous Injection or Infusion Discard after single use (For Single-Use Only)  Store At Controlled Room Temperature (59° - 86° F) and Protect From Light

The labels on the syringes did not have the name or address of the manufacturer.  But, the invoices from AIMS indicated that the syringes were filled with Venofer©.

In April 2005, an employee of American Regent met with the defendant and discussed that iron sucrose was unstable in a syringe.  In 2005, there were no safety or stability studies about the structure of the drug or its pH (acidity or alkalinity) when the drug was placed in a plastic syringe and stored.

The defendant supplied Kansas Dialysis with the misbranded iron sucrose in pre-filled plastic syringes, which Kansas Dialysis stored at room temperature for up to thirty (30) days.

Kansas Dialysis' Administrator had concerns about the stability of the drug in the pre-filled plastic syringes.  The Administrator called to question the defendant about the stability of the drug in the pre-filled syringes.  The defendant explained that he was able to extend the stability of the drug by using a special room with controlled air flow and having employees wear special space suits when filling the syringes.

Using Federal Express, AIMS shipped the pre-filled syringes containing the misbranded iron sucrose from Tennessee to Kansas.

Kansas Dialysis used the misbranded iron sucrose the defendant supplied to treat dialysis patients at its various locations in Kansas, and thereafter billed the health care benefit programs to be reimbursed for what Kansas Dialysis had been led to believe was FDA-approved Venofer©.

Health Care Benefit Programs, including Medicare, Medicaid, TriCare, the Veterans' Administration, and Blue Cross/Blue Shield of Kansas, pay for dialysis services provided to their eligible beneficiaries who have chronic kidney disease and End Stage Renal Disease.

The Health Care Benefit Programs use nationally assigned billing codes for injectable drugs, such as Venofer©.  The national Healthcare Common Procedure Coding System ("HCPCS") has assigned code J1756 for iron sucrose injections for dialysis patients, including Venofer©.  Because there is no FDA-approved generic iron sucrose drug,

when HCPCS code J1756 is billed, it indicates to the health care benefit programs that the drug being administered is Venofer©.

Kansas Dialysis billed the Health Care Benefit Programs using  HCPCS code J1756. From in or about January 2004, through in or about August 2009, the following Health Care Benefit Programs paid Kansas Dialysis the following approximate amounts for HCPCS Code J1756:

| Health Care Benefit Program | Amount Billed | Amount Paid Kansas Dialysis for J1756 |
|---|---|---|
| Medicare | | 465,680.36 |
| Veterans' Administration | | 141,359.95 |
| Blue Cross/Blue Shield | | 187,467.05 |
| Medicaid | | 47,100.49 |
| TriCare | | 9,808.92 |
| **TOTAL** | | **851,416.77** |

Of the $851,416.77, $848,504.34 was paid for the iron sucrose provided by AIMS and the defendant.

Therefore, from in or about January 2004, and continuing through in or about  August 2009, in the District of Kansas and elsewhere, the defendant, with the intent to defraud and mislead, introduced, and caused to be introduced, a misbranded drug into interstate commerce, which is in violation of Title 21, United States Code, Section 331(a), and Title 18, United States Code, Section 2, with reference to Title 21, United States Code, Section 333(a)(2).

Additionally, from in or about January 2004, and continuing through in or about August 2009, in the District of Kansas and elsewhere, the defendant knowingly and willfully executed and attempted to execute a scheme and artifice to defraud any health care benefit program, by causing Kansas Dialysis to submit false claims to health care benefit programs for an FDA-approved iron sucrose drug under HCPCS Code J1756, knowing that he had provided Kansas Dialysis with a misbranded drug that was not FDA-approved, in violation of Title 18, United States Code, Sections 2 and 1347.

7

3.    **Proposed (c)(1)(C) Sentence.**  The parties propose, as an appropriate disposition of the case, the following sentence:

(1)    The defendant will be sentenced to the custody of the Bureau of Prisons to be imprisoned for a term of 48 months at an institution designated by the Bureau of Prisons;

(2)    The defendant will be liable for restitution in the amount of $848,504.34, and will pay restitution in full prior to sentencing;

(3)    The defendant will be required to pay a criminal fine of $25,000, and will pay it in full prior to sentencing;

(4)    The defendant will pay the mandatory special assessment of $200 at the time of the plea;

(5)    The defendant will agree to a forfeiture judgment, in addition to the amount of restitution and the fine, in the amount of $425,000, and will pay this forfeiture money judgment in full prior to sentencing;

(6)    Prior to his incarceration, the defendant will, with the protection of U.S.S.G. 1.8, provide educational presentations about misbranding at local, state, and/or national pharmacy meetings, at his own expense and for no remuneration;

(7)    Following his incarceration, the defendant will remain available to provide educational presentations about misbranding at local and/or state pharmacy meetings, at his own expense and for no remuneration, and will provide such presentations upon request.

8

The parties seek this binding plea agreement as an appropriate disposition of the case because it brings certainty to the sentencing process and assures that the defendant and the government will benefit from the bargain they have struck if the Court permits itself to be bound by the proposed sentence; the interests of justice are served by the sentence, thereby assuring that the sentence is consistent with the sentencing factors of 18 U.S.C. § 3553(a); and if the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this plea agreement. This agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, probation office, U.S. Marshal's Service, and other law enforcement resources.

4.    **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the now advisory sentencing guidelines, but because this proposed sentence is sought pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.    **Government's Additional Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas also agrees:

a.    to move for dismissal of the remaining counts of the Indictment at the time of sentencing;

b.    to not file any additional charges against the defendant arising out of the facts forming the basis for the Indictment;

9

c.    to not file any charges against the defendant's wife, against whom the

government currently has no evidence of complicity in the activities

charged in the Indictment;

d.    to recommend to the Court that the defendant remain free on his own

recognizance, and self report to the Bureau of Prisons after October 26,

2013; and

e.    to recommend to the Court that the defendant be placed in a minimum

security facility near his home.

The government's obligation concerning its agreements listed in ¶ 5 are

contingent upon the defendant's continuing manifestation of acceptance of responsibility

as determined by the United States.  If the defendant denies or gives conflicting

statements as to his involvement, falsely denies or frivolously contests relevant conduct

that the court determines to be true, willfully obstructs or impedes the administration of

justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in

additional criminal conduct, the United States reserves the right to request a hearing to

determine if the defendant has breached this agreement.

In the event the Court finds the defendant has breached this plea agreement or

otherwise failed to adhere to its terms, the United States shall not be bound by this

paragraph and may pursue any additional charges arising from the criminal activity

under investigation as well as any perjury, false statement, or obstruction of justice

charges which may have occurred.  The defendant understands and agrees that in the

event the defendant violates this plea agreement, all statements made by the defendant

subsequent to the execution of this plea agreement, any testimony given by defendant

10

before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against the defendant in any and all criminal proceedings.  The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements made by the defendant subsequent to this plea agreement.

6.    **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.**  The Court has no obligation to accept the proposed plea agreement and sentence.  It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

7.    **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.**  On the other hand, if the Court agrees to be bound by proposed plea agreement and accepts the defendant's plea of guilty, the defendant will not be permitted to withdraw it.  Only if the Court rejects the proposed plea agreement will the defendant be permitted to withdraw his guilty plea.

8.    **Payment of Special Assessment.**  The defendant understands that a mandatory special assessment of $200 will be entered against the defendant at the time of sentencing.  **The defendant agrees to pay the $200 at the time of his plea.**

9.    **Waiver of Appeal and Collateral Attack.**  The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release.  The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the

11

conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under 18 U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by 18 U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

10.    **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

12

**11.    Waiver of Claim for Attorney's Fees.**  The defendant waives all claims under the Hyde Amendment, Title 18, U.S.C. § 3006A, for attorneys fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**12.    Full Disclosure by United States.**  The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities.  The defendant understands these disclosures are not limited to the counts to which the defendant has pled guilty.  The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement.  The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

**13.    Parties to the Agreement.**  The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

13

**14.    Identification of Assets & Agreement Concerning Monetary**

**Penalties**: The defendant agrees to cooperate fully with the United States Attorneys

Office and specifically agrees to:

a.    provide a financial statement on a form approved by the U.S. Attorney's

Office that discloses all assets in which defendant has any interest or over

which the defendant exercises control, directly or indirectly, including

those held by a spouse, nominee or other third party, as well as any

transfer of assets that has taken place within three (30 years preceding

the entry of this plea agreement.

b.    submit to an examination, which may be taken under oath and may

include a polygraph examination.

c.    that any waivers, consents, or releases signed by the defendant for

purposes of the Presentence Investigation Report extends to the U.S.

Attorney's Office.

d.    to not encumber, transfer, or dispose of any monies, property or assets

under his/her custody or control, without written approval from the U.S.

Attorney's Office.

e.    that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are

imposed by the court will be due and payable immediately and subject to

immediate enforcement by the United States. If the Court imposes a

schedule of payments, the defendant understands that the schedule of

payments is merely a minimum schedule of payments and not the only

method, nor a limitation on the methods, available to the United States to

14

enforce the judgment. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

f.    that the U.S. District Court is authorized to release the funds posted as security for his/her appearance bond in this case to be applied to satisfy the financial obligations of the defendant, pursuant to the judgment of the Court.

g.    to waive any requirement for demand of payment on any fine, restitution, or assessment the District Court announces on the record the day of sentencing.

15.    **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel. Further, the defendant acknowledges that he has had the plea agreement read to him, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.

15

_Tanya J Treadway_   Date: 4-12-13

Tanya J Treadway #13255
Assistant U.S. Attorney
444 S.E. Quincy, Suite 290
Topeka, KS   66683
785-295-2850

_[signature]_   Date: 4-18-13

Mike Warner
First Assistant United States Attorney

_[signature]_   Date: 4/22/13

Greg Hough
Criminal Supervisor

_[signature]_   Date: 4-9-13

Robert Harshbarger, Jr.
Defendant

_[signature]_   Date: 5-21-13

Douglas B. Farquhar
Attorney for Robert Harshbarger, Jr.

_[signature]_   Date: 4-12-13

Jeffrey D. Morris
Attorney for Robert Harshbarger, Jr.

_[signature]_   Date: 4-12-13

Christina M. DiGirolamo
Attorney for Robert Harshbarger, Jr.

16